(C. D. 1096)

MITCHEL BECK CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 22, 1948)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Guy Gilbert Ribaudo,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: This suit involves the amount of duty assessed and collected by the collector of customs at the port of Philadelphia upon a shipment of shelled almonds imported from Spain. Duty was assessed at 16½ cents per pound under the provisions of paragraph 756, Tariff Act of 1930, upon the basis of 242,763 pounds of almonds covered by entry 7547, and upon 43,953 pounds covered by entry 7561. The plaintiff claims that duty was assessed upon a greater weight of almonds than was imported into this country and that allowance should have been made for the quantities not actually landed.

At the trial six witnesses testified on behalf of the importer. These witnesses comprised all of the officials of the Government and those acting for the importer whose actions gave rise to the controversy in question. The Government, therefore, called no witnesses. The officials who acted for the Government and testified for the importer included the discharging inspector, who also was the official weigher of the almonds; the acting assistant collector, who also was the deputy

collector in charge of liquidations and who supervised the liquidation of the entries in question; and the deputy collector in charge of the outside division at the time of the weighing. The officials acting on behalf of the importer testifying herein were the vice president of the company importing the almonds; a representative of Koehler & Koehler, Inc., cargo surveyors, whose duty it is to determine the extent of damage to cargo, the cause thereof, etc.; and the public weigher employed by W. F. Sherwood & Co., public weighers, who actually weighed all of the cargo in the shipment as it was discharged from the vessel.

The pertinent portion of the testimony of these witnesses may be summarized as follows:

The unlading of the shelled almonds from the vessel *Vizcaya* began on March 27, 1944, at the port of Philadelphia and was concluded about 2 weeks thereafter.

As the importer had been notified that the almonds had arrived upon the *Vizcaya*, a representative was sent to take charge and arrived shortly after the discharging of the cargo had commenced. He noted that as the cargo was removed to the dock many of the bags were in bad condition. He went into the hold of the vessel where the nuts were stored and found that the vessel had not been properly prepared to carry such a cargo; that no dunnage was used to prevent the bags from rubbing upon the iron sides of the vessel and many bags were cut and torn from coming in contact with unprotected crossbeams. He found that some of the bags were torn and slack; others had been torn and sewn up. Accordingly, he engaged public weighers to weigh the entire shipment for the importer. He also hired a firm of surveyors and appraisers to inspect and survey the shipment and make a report to the importer of estimated damage to the cargo.

The public weigher weighed the entire 1,300 bags and found 55 slack bags out of the 200 covered by entry 7561, marked "B. Co.," and 87 slack bags out of the 1,100 covered by entry 7547 and marked "B. C. L." The bags which were not slack were weighed in drafts of three and the slack bags were individually weighed.

The United States weigher weighed 30 full bags out of the 200-bag lot, estimating therefrom the weight of the entire lot, except as to 26 found to be slack, which were weighed separately. As to the 1,100-bag lot, he weighed 107 full bags from which the average weight of that lot was determined, except as to 78 slack bags which he weighed separately.

The same Government official who acted as official weigher also acted as discharging inspector. His reports of the action of the weigher and the inspector were made and dated in April of 1944, as

shown on the entry permits. Although a report of slack bags was made in his dock book, in which he made his original notations at the time of weighing, he failed to make note of any which were slack on the entry permits. Nor did he make any report to the collector of the landed condition of the bags of nuts at that time, April 1944. In August of that year, however, an officer of the importing company requested the customs brokers to investigate the weights reported by the Government and report to the company the discrepancy between the Government's return of weight and that of the public weigher's returns.

The broker accordingly wrote to the collector for a review of the weights. In complying with this request, the collector observed that the weight certificate showed "slack bags" and requested the inspector to note that fact on the entry permits, and also to make a report thereon as to whether the merchandise had been landed from the importing vessel in an intact condition. The weights were accordingly rechecked. In such rechecking an error was found in the computation of the weights on the 1,100-bag lot and a corrected weight return was furnished which showed an increase of 400 pounds over the weight originally returned. The inspector also noted on the entry permit in each entry the number of slack bags which he had reported in his dock book and added the words "Landed intact." It might be noted that the landed condition of the bags was described on these reports 4 months after the original reports were sent to the collector. It also appears that the inspector's report as to the intact landing was not based upon his personal knowledge of the condition of the bags but was so made because the steamship company failed to report to him that some of the bags were landed in bad condition.

As a result of the amended report of the inspector that the merchandise had been landed intact, the collector notified the plaintiff's broker by letter dated August 29, 1944, attached to the entry papers and made a part of the evidence herein, that no allowance in duties would be made for the slack bags because of the fact that the loss had occurred after landing. However, the collector in calculating the duties, because of his disregard of slack bags, followed neither the Government weigher's return of weight nor the public weigher's returns. In entry 7561, he determined the gross weight of the 200 bags by averaging their weight on the basis of the actual gross weight of the 30 full bags which the weigher reported, and found the net weight by deducting from such gross weight a tare weight of the bags equal to 500 pounds. In entry 7547, the gross weight of the 1,100 bags was found by averaging their weight on the basis of the actual gross weight of 107 full bags reported by the weigher, and the net weight by deducting a tare weight of the bags equal to 4,850 pounds.

It further appears that the importer sued the steamship company because of the loss sustained in the poor handling of the cargo and obtained a judgment in its favor against that company.

The various letters, memoranda, and other documents pertaining to the recheck of the Government weights and the Government weigher's returns of weight are a part of the entries in question and were admitted in evidence as collective exhibits 1 and 2. The certificates of weight reported by the public weigher hired by the importer to weigh the 1,300 bags of almonds here in question were admitted in evidence as collective exhibit 3.

The evidence before us in this case establishes that the Government weigher's return of weight of the almonds imported in the 1,300 bags in question was determined by means of averaging the weight of 137 bags, and that the 104 slack bags which he found and weighed separately were not taken into consideration by the collector when he calculated the amount of duty. His failure to consider the short weight of these bags was not because he did not believe they were actually short in weight but rather because the steamship company failed to report damage to any part of the shipment. Thus, the collector assumed that any such shortage in weight occurred after the goods were landed in this country, and consequently were subject to duty.

It is apparent, however, that the slack weight in the bags was caused by the carelessness of the steamship company in storing the cargo on board the ship, as evidenced by judgment against the carrier in that regard. It further appears from the uncontroverted evidence that each of the bags of almonds was weighed by the public weighers hired by the importer. The full bags were weighed in drafts of three and as the entire shipment was weighed the public weigher found more slack bags than reported by the United States weigher. These slack bags were individually weighed by the public weigher.

In view of the fact that all of the bags of almonds were not landed from the importing vessel intact, as assumed by the collector, and the conclusive proof before us of the actual shortage, as shown by the reports of the public weigher of the landed gross weights, we are of the opinion that the weights shown by the public weigher's reports are the actual measure of the total landed weight of the almonds in question rather than the weights reported by the Government weigher.

Judgment will therefore be entered in favor of the plaintiff. The collector is accordingly directed to reliquidate the entries upon the basis of the gross weights appearing in the public weigher's reports, less the tare of the bags, agreed between counsel to be a total of 500 pounds under entry 7561 and 4,850 pounds under entry 7547, and to make refund in accordance with law.